IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Malibu Media, LLC,                              Case No.  3:15 CV 810

                             Plaintiff,         <u>TRIAL ORDER</u>

              -vs-                              JUDGE JACK ZOUHARY

John Doe,
*Subscriber assigned*
*IP address 98.28.46.245*,

                             Defendant.


This case is scheduled for a jury trial to commence on **Wednesday, June 1, 2016 at 9:30 a.m.** in the courtroom of the Honorable Jack Zouhary, United States District Judge, located on the second floor, Courtroom 209, United States Courthouse, 1716 Spielbusch, Toledo, Ohio.  Counsel may call Chambers (419-213-5675 or 419-213-5679) concerning trial protocol or procedures.

If a civil case settles within three (3) weeks of trial, $2,500 in court costs will be assessed against the parties absent a showing of good cause.  This represents the time and cost of summoning and preparing for a jury, including the preparation and mailing of juror questionnaires for voir dire, as well as the cost for attendance and accommodations for jurors.

**JOINT STATEMENT**

1.      Counsel shall consult with each other and submit a proposed Joint Statement of the Case (to be read to the jury at the beginning of the trial) which should include a brief statement of the facts, stipulations and contested issues.  The Joint Statement may note any disagreements and offer alternate language as appropriate.

**VOIR DIRE AND JURY INSTRUCTIONS**

2.      Parties shall submit a list of proposed witnesses with a brief summary of their testimony and a brief discussion of any evidentiary issues likely to arise at trial.  If counsel intend to utilize video technology, such as a PowerPoint presentation, counsel shall provide the presentation in electronic form to both opposing counsel and this Court.

3.      A proposed Juror Questionnaire for mailing to the jury pool in advance of trial will be shared with counsel.  Counsel may also file proposed questions to be added to the Questionnaire or to be added to in-court voir dire examination conducted by the Judge.  Trial counsel are allowed brief follow-up examination of the venire.

4.      Counsel shall consult with each other and file **joint** proposed jury instructions, noting those areas where the parties disagree and offering alternate language with supporting legal authority as appropriate.

5.      Counsel should review the District Court website for Judge Zouhary's standard voir dire questions and boilerplate jury charge:

http://www.ohnd.uscourts.gov/Judges/index.html

6.      Counsel shall provide Chambers with a courtesy hard copy of the above pretrial filings (Paragraphs 1–4) which shall be filed at least **two weeks before trial**.

**MOTIONS IN LIMINE**

7.      Motions in limine shall be filed at least **three weeks before trial**; opposition due one week later.  Ten (10) page limit for each side.  Motions will be ruled on in advance of trial.  Counsel *must* consult with each other prior to filing to see if agreement can be reached.

## DEPOSITION TESTIMONY

8.      Parties are specifically directed to comply with the provisions of Local Rule 32.1. Counsel shall confer to determine which testimony will be offered by deposition (including videotape deposition), agree on the designation of those portions of the depositions to be offered into evidence, and also identify any objections.  Counsel shall file a proposed order listing the page(s) and line(s) for each designation objection.  Designations and counter-designations shall be marked in a full copy of the deposition transcript (not the condensed minuscript format), with designations and counter-designations highlighted in different colors.   Plaintiff's initial designations/counter-designations shall be highlighted in yellow; Defendant's initial designations/counter-designations shall  be highlighted in green.  Objections shall be highlighted in red.  Counsel shall note objections in the margins of the transcript, including the basis and legal support for any objections, and the offering party's responses to any objections. See attached sample proposed order and corresponding transcript.

9.      Counsel shall file a complete written transcript of each deposition to be used at trial no later than **two weeks before trial**, and shall provide a hard copy to Chambers.  Objections will be ruled on in advance of trial.

10.      If a complete written transcript has already been filed, counsel need not file a duplicate copy, and may file only the relevant pages containing designations and objections.

## EXHIBITS

11.      Counsel shall exchange exhibits with each other, and bring to court one set for use at trial.  If a party will use realtime or order daily transcripts, the party shall provide the court reporter with a second set of exhibits.  Do not file exhibits with the Clerk of Courts.  Counsel shall file a "List of Exhibits" consistent with the JERS CD.  See JERS Order and deadline of **two weeks before trial**.

12.     Exhibits must be marked before trial with numbers, irrespective of which party is producing the exhibit.  No duplicates are allowed.  Sequence of numbers is not important.

13.     Counsel are responsible for maintaining original trial exhibits, and for filing exhibits needed for appeal purposes.

### NOTICE TO COURT REPORTER

14.     In order to facilitate the creation of an accurate Realtime record, counsel shall provide a "Notice to Court Reporter" **one week before trial** containing:

- Proper names, including those of witnesses;
- Acronyms;
- Geographic locations;
- Technical (e.g., medical) terms, names or jargon.

The Notice to Court Reporter need **not** be filed but shall be provided in person or via e-mail to Zouhary_Chambers@ohnd.uscourts.gov.

### COURTROOM ELECTRONICS

15.     Well in advance of trial, counsel should be trained and familiar with the electronic presentation of evidence and the use of courtroom equipment.  Training the week before trial is not permitted.

IT IS SO ORDERED.

_____s/ Jack Zouhary_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

January 19, 2016

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Malibu Media, LLC,                                    Case No. 3:15 CV 810

                              Plaintiff,              [PROPOSED] RULINGS ON
                                                      OBJECTIONS TO TESTIMONY
                    -vs-                               OF XXXX_____

John Doe,                                             JUDGE JACK ZOUHARY
*Subscriber assigned*
*IP address 98.28.46.245*,

                              Defendant.



Page    Line No.        Ruling

26      Lines 8–25      [to be completed by Court]

27      Lines 1–5       [to be completed by Court]

12   I allowed him to respond in Spanish on one particular
13   test.
14        Q.  But I assume you believe that the -- his -- his
15   English abilities did affect his test scores?
16        A.  Absolutely.
17        Q.  Okay.  Low education, how would his -- his
18   relative lack of education affect his test scores?
19        A.  The lower the education, they're highly
20   correlated with test scores.  So when you have a low
21   education, it certainly impacts the scores.  Now, some
22   of the scores have corrections for education, so you
23   look at norms that are normed to somebody with a
24   sixth-grade education.  Not all the tests are normed --
25   norm reference to that.  Some of the tests like the

                              26
1    Wechsler test doesn't have a norm based on -- or doesn't
2    have a norm correction based on education.  Some of the
3    tests that I use do.
4         Q.  Okay.
5         A.  But nevertheless, education impacts scores.
6    The higher your education, the higher your
7    neuropsychological scores in general.
8         Q.  Okay.  The next thing that you mentioned was
9    the physical, mental, and emotional affects of his toxic
10   condition.  First of all, what do you mean by that?
11        A.  If, in fact, this gentleman has toxic
12   condition, as was reported in some of the physicians
13   reports, it -- it's going to result in these symptoms.
14   He's going to show physical limitations, which he has
15   described.  He's going to struggle mentally.  What I
16   mean by that is it could be concentration, it could be
17   attention, it could be memory.  Any of those factors
18   that we talk about will be depressed if -- if there is a
19   toxic condition or can be depressed.  And emotionally,
20   some of these toxic conditions can cause depression.
21        Q.  Okay.  So the symptoms that be presented to you
22   with that you noted in your report and the cognitive
23   impairment that you described would be consistent with a
24   toxic exposure?
25             MR. COHEN:  Object to the form.

                              27
1         Q.  (BY MR. HILL)  Would it be consistent with a
2    toxic exposure?
3             MR. COHEN:  Object to the form.

D's Obj: P 26 L 8-P 27 L 3;  he did
not make a diagnosis to a
reasonable degree of
neuropsychological certainty.
Therefore, discussion of his
"diagnosis" should be excluded.
Speculation as well. Leading.

Pl response:  these objections are
without merit. Furthermore,
Defendants did not file a Daubert
motion on Dr. Schmitt and are
improperly trying to back door this
untimely objection.

4      Q.  (BY MR. HILL)  You can answer --
5      A.  Could be.
6      Q.  Now, let's go back to the -- to the issue of
7   variable effort, and you described that not only in your
8   summary here on page -- what's page 10 --
9      A.  Uh-huh.
10     Q.  -- according to the --
11     A.  Okay.
12     Q.  -- Bates numbers at the bottom.
13     A.  Okay.
14     Q.  And in a couple of other -- other places as
15  well in the -- the specific testing results that you
16  noted, I think you've used either the same term or a
17  similar term to describe little effort or a lack of
18  effort perceived on his part during the testing?
19     A.  To my perception, yes.
20     Q.  But you have a sentence here in your summary
21  that says that you don't think that what you perceived
22  as a lack of effort should be considered a purposeful
23  attempt to thwart the results of the examination.
24     A.  Correct.
25     Q.  What does that mean?

                              28
1      A.  Sometimes patients come in with the intention
2   of doing just that.  You see that in litigation --
3      Q.  Uh-huh.
4      A.  -- with the intent to underscore in order to
5   produce some effect on the litigation.  For example --
6   there are other reasons why people might want to
7   underscore.
8          It was my perception at the time that it
9   wasn't purposeful to affect the results of the test.
10  My impression was only that I questioned his effort at
11  times.  I don't usually make any judgment as to why
12  someone is producing suboptimal results.  Even when I
13  administer standardized effort measures, I generally
14  don't make a subjective opinion as to why someone's
15  effort is strong or weak.  What I use that for is
16  validity of the findings.  If effort is suboptimal, it's
17  suboptimal and it affects the validity and I leave it at
18  that, and that's generally --
19     Q.  Sure.
20     A.  Does that answer the question?
21     Q.  Yeah, it does.
22          But in this case specifically, you did note